In re the Marriage Of Charlotte Ruth HOFFA, petitioner, Respondent,

v.

Randy Lee HOFFA, Appellant.

No. C0–85–1376.

Court of Appeals of Minnesota.

Feb. 18, 1986.

Steven Z. Lange, Katz, Lange, Davis & Manka, Minneapolis, for respondent,

William D. Schutter, Babcock, Locher, Neilson & Mannella, Anoka, for appellant.

Considered and decided by WOZNIAK, P.J., and SEDGWICK and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Randy Hoffa appeals from an amended judgment and decree that dissolved his marriage to respondent Charlotte Hoffa. He contends that: (1) the trial court's award of custody to Charlotte was arbi-trary; (2) the court erred in determining his child support obligation; and (3) the property division was inequitable.

## FACTS

The parties were married on June 20, 1970. They have two children: Lea, born June 18, 1971, and Amy, born March 11, 1975. Randy Hoffa is the sole owner of two businesses: C in C Softmetal Casting and PFC, Inc. PFC is a smaller "spin off" company that markets military games and some of C in C's products. Randy's income consists of royalties paid by C in C for the use of his original designs. Charlotte be-gan working as an accountant for a St. Paul law firm in January of 1983 and is now a contract administrator with First-Tel.

Both parents had provided care to Lea, the oldest child, but when Amy was born Charlotte provided for "all of the needs an infant has." Both girls are intelligent and do well in school.

Richard Erickson, a social worker, testi-fied as an expert witness for Charlotte that it was in the best interests of the children that they live with her because she would be "the more stable of the two as far as parenting the kids in the long run." He based his opinion on the results of psycho-logical tests (MMPIs) and 35 hours of inter-views with the children, both parties, and their parents. Erickson felt that remarks by Randy's parents, his personal impres-sions of Randy, and his MMPI were factors that outweighed the children's expressed preference to live with Randy.

Charlotte's mother and Randy's parents testified that in their opinion, Charlotte was the better parent.

Dr. Margaret Doren, a licensed consult-ing psychologist, testified as an expert wit-ness on behalf of Randy. She interviewed both girls and Randy, but did not talk with Charlotte. Doren felt that for psychologi-cal and developmental reasons, the girls would be better off with their father than with the mother. Both girls told Doren they definitely wanted to live with Randy.

The trial court conducted an in camera interview of both children. The court felt that Randy had influenced the children's preference.

The court found that both parents were fit, but concluded that "the overall balance results in the inescapable conclusion that Char is the more stable, mature, day-to-day long-run parent." The trial court awarded full custody to Charlotte and included a lengthy memorandum explaining its decision. The court also ordered Randy to pay $110 per week for support of the two children based on his gross yearly salary of $16,000.

The only other issue at trial was the character and value of Randy's interest in C in C Softmetal Casting. The trial court had three indications of the value of C in C:

| | |
|---|---|
| Value based on 1982 buyout......... | $46,500.00 |
| Randy's personal financial statement prepared for loan application to a bank............................ | 30,600.00 |
| Book value (stated capital) from 1983 balance sheet ..................... | 19,055.81 |

The court found that C in C was worth $19,055.81 and awarded the business to Randy.

Randy then brought a motion for an amended judgment and requested that he be given custody of the children or, in the alternative, that his child support obligation be set at $250 per month based on a "gross annual income of $16,000.00." Randy also maintained that C in C was a nonmarital asset because the initial capital for the business was the insurance settlement. The trial court denied Randy's motion regarding custody and the property division. The court requested additional evidence on the child support issue, and took the matter under advisement.

In an amended judgment and decree, the court found that:

Respondent is steadily self employed with C in C Softmetal Casting, Inc., from which Respondent derives an average annual after-tax income of $16,000.00.

The court amended its findings regarding Randy's cost of providing health insurance for the children and found that:

For purposes of applying the child support guidelines, Minn.Stat. § 518.552, Subd. 5, Respondent has a net monthly income of $1,224.59 until October 1, 1984, at which time Respondent will have a net monthly income of $1,187.08.

Randy was ordered to pay $367 per month for support from April 19, 1984, and $356.12 per month after October 1, 1984.

## ISSUES

1. Did the trial court abuse its discretion in awarding custody to respondent?

2. Was the trial court's finding regarding appellant's net income clearly erroneous?

3. Did the trial court abuse its discretion in characterizing, valuing, or apportioning the property?

## ANALYSIS

### I.

The guiding principle in all custody cases is the best interests of the child. *See* Minn. Stat. § 518.17, subd. 3 (1984). A trial court is to determine the "best interests" of the child by considering the following factors:

(a) The wishes of the child's parent or parents as to his custody;

(b) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(f) The permanence, as a family unit, of the existing or proposed custodial home;

(g) The mental and physical health of all individuals involved;

(h) The capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in his culture and religion or creed, if any; and

(i) The child's cultural background.

Minn.Stat. § 518.17, subd. 1 (1984).

In *Peterson v. Peterson,* 308 Minn. 297, 242 N.W.2d 88 (1976), the supreme court observed that custody cases are in a class of their own:

> [A custody determination] invariably involves a decision based upon facts which must be determined by a resolution of conflicting testimony or inferences to be drawn from reports made by supporting family court personnel. Evidence relating to the character, habits, and personality of the parents and children, the quality of the relationships among them, and the growing needs of the children and their preferences is seldom, if ever, without dispute, and the inferences which may be drawn from such evidence are seldom compelled by it.

*Id.* at 307, 242 N.W.2d at 94–95. Appellate review of custody determinations is accordingly limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985). The trial court's findings must be sustained unless clearly erroneous. Minn.R.Civ.P. 52.01.

Randy contends that the trial court's findings respecting factors (b), (c), (d), (g), and (h) were not based upon the evidence, and that the award of custody to Charlotte was therefore arbitrary.

REASONABLE PREFERENCE OF THE CHILDREN

■ A child's preference is one of a number of factors the court must consider in determining the "best interests" of the child. Minn.Stat. § 518.17, subd. 1(b). But under the statute this preference must be a reasonable one. *Id.* The court concluded, in essence, that the children's preference was not a reasonable one because it was tainted by manipulative conduct on Randy's part.

CHILDREN'S INTERACTIONS WITH PARENTS AND OTHERS

Here both parties had good relationships with the children, had·shared "child rearing" responsibilities to some extent, and each believed the other parent was fit. But several witnesses, including family members, testified that Charlotte would make the better parent and that she should have custody. The court accepted this evidence and found that Charlotte:

> will provide better food, clothing, and other parenting responsibilities. Long term day-to-day parenting is the goal which Char most readily meets.

Our review of the record reveals sufficient evidentiary support for this finding.

HEALTH OF ALL INDIVIDUALS INVOLVED

Randy Hoffa suffers from several physical ailments, including a bad back and arthritis. In contrast, Charlotte is apparently in good health.

The trial court properly weighed and considered this evidence in its memorandum and concluded that, on balance, Charlotte was "the more stable, mature, day-to-day long-run parent."

CAPACITY FOR AFFECTION AND GUIDANCE

Both parents are fit and have a good relationship to the children. The court simply concluded that Charlotte's character and experience was better suited to the "day-to-day" task of raising children.

■ In summary, the trial court considered the evidence in light of the factors outlined in Minn.Stat. § 518.17, subd. 1, made findings which were supported by that evidence, and concluded that an award of custody to Charlotte was in the best interests of the children. This award was within the court's broad discretion and must therefore be sustained.

## II.

■ Under Minn.Stat. § 518.17, subd. 4 (1984) a trial court may order either parent to pay an amount reasonable or necessary for the support of a child. Children "are entitled to benefit from the income of the non-custodial parent and to enjoy the standard of living that they would have had if the marriage had not been dissolved." *Letourneau v. Letourneau*, 350 N.W.2d 476, 478 (Minn.Ct.App.1984).

Randy contends that the trial court improperly calculated his net income in determining his child support obligation. He argues that his 1984 federal income tax return showed a gross income of $8,290.00 in royalties from C in C, a business loss of $8,958.00, and a total taxable income of only $2,863.00.

The trial court considered Randy's recent history of royalty income as reflected on his federal income tax returns:

| YEAR | ROYALTY INCOME | BUSINESS LOSS |
| --- | --- | --- |
| 1979 | $25,865.46 | $4,662.69 |
| 1980 | 22,462.59 | 5,120.70 |
| 1981 | 15,654.93 | 822.59 |
| 1982 | 16,021.23 | 655.57 |
| 1983 | 20,085.42 | 4,502.00 |
| 1984 | 8,290.00 | 8,958.00 |

A memorandum, incorporated in the trial court's order for amended judgment, explained the net income calculation:

> Having reviewed the income tax returns for 1979 to 1984, the Court is satisfied that the $16,000.00 figure represents after tax income. Taking into account only the Respondent's royalty income for 1979 to 1983, and the amount listed as a royalty expense for Respondent's business in 1984, the average gross figure is $20,317.93. Respondent also receives wages and other benefits from his company, although these cannot be calculated with any certainty from the submitted tax returns. Nevertheless, it appears that the $16,000.00 figure more closely reflects an after-tax income rather than a before-tax income.

■ The court considered all information regarding Randy's resources and made the necessary specific finding as to his net income. We agree with the trial court that the $16,000 figure accurately reflects Randy's net income.

## III.

Randy's final contention is that the property division was inequitable because the trial court: (a) erred in finding that C in C was marital property, and (b) incorrectly valued that business.

### CHARACTERIZATION OF C IN C

In July of 1972 Randy received $2,683 in settlement of his 1969 automobile accident. He used $1,700 of those funds to start C in C, which represented about 30 per cent of the $5,500 initial capital. Randy contends that that percentage of the business should have been a non-marital asset. We disagree.

■ Minn.Stat. § 518.54, subd. 5 (1984) defines marital and non-marital property. Property acquired by either spouse during the marriage is presumed to be marital property. *Id.* A trial court's findings will not be reversed unless they are clearly erroneous. Minn.R.Civ.P. 52.01.

■ Charlotte testified that she helped Randy to start the business by working as a bookkeeper and by supporting the family. The business was operated out of the homestead from 1972 until 1982. Randy purchased his father's 40 percent share of the business in 1982, which further diluted any non-marital portion that might have remained. Under these facts, Randy did not sustain his burden of proving by a preponderance of the evidence that C in C was his non-marital property.

### VALUE OF C IN C

■ The clearly erroneous standard applies to a trial court's valuation of assets. The market value determined by a trial court will be sustained if it falls within the limits of credible estimates made by competent witnesses. *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975). An appellate court should give "substantial deference to the findings of the trial court and recognize that in a matter such as this

exactitude is not possible." *Rogers v. Rogers*, 296 N.W.2d 849, 853 (Minn.1980).

Here the trial court considered evidence of the value of C in C from three sources: a buy-out transaction, a personal financial statement prepared by Randy, and the company's 1983 balance sheet. The court found that the value of the business depended in large part on Randy's skill and continued work, and therefore adopted the lowest indicated value of $19,055. The trial court wanted to avoid "capitalizing" Randy's future earnings. *See Rogers*, 296 N.W.2d at 853 (award on assumption that husband would continue to contribute his talents and services to corporation was to essentially capitalize him; such award would give wife forced share of husband's future work which as a property award could not be modified to reflect future changed circumstances). We agree with the trial court that "this business does have some value." The valuation being within the range of credible estimates, we will not disturb it on this appeal.

Respondent requested in her brief that this court award her reasonable attorney fees for the costs of responding to appellant's motion. Respondent's request is denied because it is not timely. *Timm v. State Bank of Young America*, 374 N.W.2d 588, 590 (Minn.Ct.App.1985); Minn. Stat. § 549.21 (1984).

### DECISION

1. The award of custody to respondent must be sustained because the trial court's findings are supported by the evidence.

2. The trial court did not abuse its discretion in determining appellant's net income based on his history of royalty payments.

3. The trial court's characterization, valuation, and distribution of assets was supported by the evidence. The trial court had discretion to find the value of that business was at the low end of a range of credible values.

Affirmed.